IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02224-WJM-CBS

TERENCE J. HANKINS,
        Plaintiff,
v.

JOHN E. HUSBAND, individually + as Manager Little Snake Resource Area,
U.S. BLM, and
AXIS STEEL, INC.,
        Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) Defendant Husband's "Motion to

Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)" (filed December 23, 2011) (Doc. # 24);  (2)

Defendant Axis Steel, Inc.'s ("Axis") "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

or, in the Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (filed

January 13, 2012) (Doc. # 30); and (3) Defendant Federal Bureau of Land Management's

("BLM") "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)" (filed February 23, 2012)

(Doc. # 35).  Pursuant to the Order of Reference dated October 21, 2011 (Doc. # 9) and the

memoranda dated December 28, 2011 (Doc. # 25), January 13, 2012 (Doc. # 31), and

February 23, 2012 (Doc. # 37), these matters were referred to the Magistrate Judge.  The

court has reviewed the Motions, Mr. Hankins' "More Definite Statement of Claims . . ." (filed

March 29, 2012 ) (Doc. # 57) (docketed by the Clerk of the Court as a "Supplement"), Mr.

Hankins' Response to Axis' Motion to Dismiss (filed May 18, 2012) (Doc. # 59), Axis' Reply

(filed May 21, 2012) (Doc. # 60), and Mr. Hankins' Responses (filed May 22, 2012) (Docs. #

61 and # 62).  The court has also reviewed the pleadings, the entire case file, the

proceedings held on January 5, 2012 and May 15, 2012 (*see* Amended Courtroom

Minutes/Minute Order (Doc. # 28), Courtroom Minutes/Minute Order (Doc. # 58)), and the

applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Mr. Hankins is currently incarcerated at the Sterling Correctional Facility ("SCF") of the Colorado Department of Corrections ("CDOC") in Sterling, Colorado, serving a life sentence without parole for a murder conviction.  (*See* Complaint (Doc. # 1) at 2 of 12;  *People v. Hankins*, 201 P.3d 1215 (Colo. 2009)).  Mr. Hankins brings this lawsuit pursuant to 42 U.S.C. § 1983.  (*See id.* at 3 of 12).  Mr. Hankins alleges that in or about August of 2010, Defendant Axis, "under contract from BLM," entered property that he possessed pursuant to an unpatented mining claim, and damaged and removed mining equipment and personal property "without the benefit of due process."  (*See* Doc. # 1 at 4, 7 of 12).  *See also United States v. Locke*, 471 U.S. 84, 86 (1985) (citing 30 U.S.C. § 26) (allowing "United States citizens to go onto unappropriated, unreserved public land to prospect for and develop certain minerals," the discovery of which, followed by minimal procedures, "gives an individual the right of exclusive possession of the land for mining purposes.")).  Mr. Hankins seeks monetary and "punitive compensation" for the loss of and damage to his property and the loss of future earnings from his mining activities.  (*See* Doc. # 1 at 6-7, 9, 12 of 12).

II.     Standard of Review

Defendants Husband and the BLM move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1).  Defendant Axis moves to dismiss the Complaint pursuant to Rule 12(b)(6) or in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory

allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). *See also Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) ("Mere conclusory allegations of jurisdiction are not enough; the party pleading jurisdiction must allege in his pleading the facts essential to show jurisdiction.") (internal quotation marks and citations omitted). As the party asserting jurisdiction, Mr. Hankins bears the burden of establishing that this court has jurisdiction to hear his claims against Defendants Husband and the BLM. *American Fair Credit Ass'n v. United Credit Nat. Bank*, 132 F. Supp. 2d 1304,1308-09 (D. Colo. 2001) (citation omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 550 U.S. at 556. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

> Summary judgment is warranted under Federal Rule of Civil Procedure 56 if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. When, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate specific facts showing that there is a genuine issue for trial.
>
> Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. A disputed fact is material if under the relevant substantive law it is essential to proper disposition of the claim. An issue is genuine if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.

*Llewellyn v. Allstate Home Loans, Inc.*, 795 F. Supp. 2d 1210, 1222 (D. Colo. 2011) (internal quotation marks and citation omitted).

Because Mr. Hankins appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings."  *Hall Bellmon*, 935 F.2d 1106, 1110 n. 3 (10th Cir. 1991) (citations omitted).  However, a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's advocate);  *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint");  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

    As the Complaint has been sworn to under penalty of perjury (*see* Doc. # 1 at 12 of 12), the court may treat it as an affidavit.  *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997).  Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value."  *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted).  *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted).  "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory."  *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).

III.    Background

        In approximately June of 1987, plaintiff acquired an interest in the Ace #
7 association placer mining claim in Moffat County, Colorado.
        . . . The Ace # 7 mining claim was inspected in 1998, 1999, and 2000 by
the Bureau of Land Management ("BLM"), and it was determined that plaintiff's
activities on the claim did not comply with the use and occupancy regulations of
the United States Department of Interior ("Interior") set forth at 43 C.F.R.
subpart 3715. On September 26, 2000, the BLM issued a Notice of
Noncompliance ("NON") to the plaintiff. Citing to 43 C.F.R. § 3715.2, the BLM
stated that prior site visits had revealed that although there was ancillary work
being performed on the Ace # 7 mining claim, "no appreciable mining activity
was documented as having occurred" involving "significant regular extraction
and processing of mineral bearing earth materials." The NON directed that
plaintiff had 30 days in which to remove his trailer, outbuildings, mining
equipment, materials, supplies, septic system, and debris from the public lands.
        . . . On October 25, 2000, the plaintiff appealed the NON to the Interior
Board of Land Appeals ("IBLA").
        . . . The IBLA issued its ruling on plaintiff's appeal on July 22, 2004. In
reviewing the BLM's finding that the plaintiff was not in compliance with 43
C.F.R. § 3715.2, the IBLA found that plaintiff did not meet the requirements of
the regulation in maintaining a residence on the claim and affirmed the BLM on
the residence issue. However, the IBLA did reverse the 2000 NON on the issue
of plaintiff's use of the mining claim for storage purposes, and also found that
the notice improperly ordered the plaintiff to immediately cease all activity and
reclaim the site. The IBLA determined that the BLM should have given the
plaintiff a period of 60 days within which to demonstrate that he had taken
corrective action to bring his mining operation into compliance with the law. The
matter was remanded to the BLM "to issue an amended NON that will establish
a period of 60 days for Hankins to demonstrate that he has taken corrective
action to bring his mining operation into compliance."
        On September 22, 2004, the BLM issued an Amended Notice of
Noncompliance ("Amended NON"), in accordance with the IBLA ruling. Under
the Amended NON, plaintiff was given 60 days in which to demonstrate that he
had taken corrective action with regard to the mining claim which would comply
with 43 C.F.R. § 3715. Plaintiff was warned in the Amended NON that if he
failed to demonstrate compliance within the allowed time, the BLM "may take
appropriate action to require removal of the residence facilities and appropriate
reclamation of the site."

*Hankins v. Norton*, No. 04-cv-02196-PSF-OES, 2005 WL 2141007, at ** 1-2 (D. Colo. Sept.

2, 2005), *Report and Recommendation Adopted,* 2005 WL 2372834 (D. Colo. Sept. 27,

2005).

        On October 22, 2004, Mr. Hankins, acting pro se, filed his Complaint in *Hankins v.*

*Norton*, Civil Action No. 04-cv-02196-PSF-OES. On September 27, 2005, the court

dismissed the action in its entirety without prejudice pursuant to Fed. R. Civ. P. 12(b)(1),

finding that Mr. Hankins failed to meet his burden of showing a waiver of sovereign immunity

or allege any basis on which subject matter jurisdiction could be found to exist for the claims he sought to bring and no other basis for subject matter jurisdiction was "apparent from the record." *Id.*, at * 13.

The BLM's removal of property from Mr. Hankins' mining claim was part of the BLM's reclamation of the land pursuant to regulations concerning use and occupancy of federal land under the mining laws, 43 C.F.R. § 3715, et seq., and a Cessation Order issued to Plaintiff on April 4, 2008.  (*See* Exhibit B to Defendant Husband's Motion (Cessation Order) (Doc. # 24-2)).  The Cessation Order was issued based on BLM's determination that Mr. Hankins' occupancy of the claim was not in compliance with the use and occupancy regulations.  (*See id.* at 2, 5 of 8).  Pursuant to the use and occupancy regulations, any property that Mr. Hankins failed to remove became property of the United States and was subject to removal and disposition by the BLM.  *See* 43 C.F.R. § 3715.5-2.  Mr. Hankins alleges that his property was removed in or about August of 2010.  (*See* Doc. # 1 at 4, 6, 9 of 12).[1]

IV.     Analysis

A.     Defendants Husband's and BLM's Motions to Dismiss

Mr. Hankins brings his claims pursuant to 42 U.S.C. § 1983.  (*See* Doc. # 1 at 3 of 12).  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  "In order to successfully state a cause of

---

[1]     In the Complaint, Mr. Hankins refers to his mining claim as "Mindy Rae No. 1."  (*See* Doc. # 1 at 4 of 12).  However, at the time that the Cessation Order was issued, his unpatented mining claim on the land at issue was located under the name "Ace No. 7."  BLM terminated the Ace No. 7 mining claim on April 21, 2008.  (*See* Exhibit D (serial register pages for Ace No. 7) (Doc. # 24-4) at 2 of 4).  In March 2009, nearly a year after the Cessation Order was issued, Mr. Hankins located "Mindy Rae No. 1" on the same land on which Ace No. 7 had been located.  (*Compare* Exhibit  A to Defendant Husband's Motion (Ace No. 7 Placer Mining Claim Location Notice) (Doc. # 24-1) with Exhibit C (Mindy Rae No. 1 Location Notice) (Doc. # 24-1 at 3 of 3) (describing same location of claim: "Sec. 8, T11N, R91W, 6th P.M.").

action under section 1983, [Mr. Hankins] must allege . . . the deprivation of a federal right and that the alleged action was taken under color of state law." *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) (internal quotation marks and citation omitted).

Mr. Hankins brings his claims against the BLM, a federal agency, and Mr. Husband, an employee of the BLM, in his official capacity, alleging misconduct related to the performance of their duties.  Defendants BLM and Mr. Husband hold authority and acted only pursuant to federal law.  No action under § 1983 lies against federal officials acting pursuant to federal law.  *See, e.g., District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973) ("actions of the Federal Government and its officers are at least facially exempt from [§ 1983's] proscriptions"); *Jackman v. United States*, 604 F. Supp. 2d 84, 89 (D.D.C. 2009) (cause of action under § 1983 cannot be maintained against the United States or its officers because "[s]ection 1983 does not apply to federal officials acting under color of federal law") (citation omitted); *Campbell v. Amax Coal Company*, 610 F.2d 701, 702 (10th Cir. 1979) (§ 1983 does not apply to federal officers acting under color of federal law); *Albajon v. Gugliotta*, 72 F. Supp. 2d 1362, 1369 (S.D. Fla. 1999) (§ 1983 applies only to a violation of a federal or constitutional right while acting under color of state law).  Without facts alleged to demonstrate action under color of state law, Mr. Hankins' § 1983 claims against the BLM and Mr. Husband do not state a claim upon which relief can be granted.


1.     Claims against BLM and Mr. Husband in his Official Capacity

Even if the court liberally construes Mr. Hankins' claims as something other than § 1983 claims, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued. . . ." *United States v. Sherwood*, 312 U.S. 584, 586–87 (1941).  *See also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  A claim for damages against a federal defendant in his official capacity is treated as a claim

against the United States. *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996). *See also Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir.1989) ("when an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." (citations omitted)). "It is well settled that the United States and its employees, sued in their official capacities, are immune from suit, unless sovereign immunity has been waived." *Atkinson*, 867 F.2d at 590 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-67, 105 S. Ct. 3099, 3105 (1985). As to Mr. Hankins' claim for violation of due process, Congress has not waived the federal government's sovereign immunity with respect to constitutional torts, and therefore the United States is immune from a damages suit for a constitutional tort. *See F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) (holding that the United States may not be sued under the Federal Tort Claims Act for a constitutional tort and that federal agencies may not be sued under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (doctrine of sovereign immunity precludes a *Bivens* action against the United States or any agency thereof).

Mr. Hankins alleges jurisdiction based also on the "Mining Law of 1865 (Placer Mining)", the "Multiple Use Act (1947)," and 43 C.F.R 3800. (*See* Doc. # 1 at 3 of 12). The Mining Law of 1872 does not contain an express waiver of sovereign immunity. *See Hankins*, 2005 WL 2141007, at * 6 (citing 30 U.S.C. §§ 22 *et seq.*). Mr. Hankins has not pointed out and the court has not located an express waiver of sovereign immunity related to the "Mining Law of 1865 (Placer Mining)" alleged in the Complaint. Neither the Multiple Use Mining Act of 1955 nor the Materials Act of 1947 contains an express waiver of sovereign immunity. *See* 30 U.S.C. §§ 601 *et seq.* Nor do the regulations of mining claims under the general mining laws contain an express waiver of sovereign immunity. *See* 43 C.F.R. Part

3800.[2]

In his Response to Defendant Husband's Motion to Dismiss, Mr. Hankins argues that "[r]esolution of the dispute was to be based on the provisions of the Federal Tort Claims Act (FTCA), which waives sovereign immunity for wrongs to individuals by federal agents." (*See* Doc. # 61).[3] The FTCA "provides the exclusive avenue to assert a claim sounding in tort against the United States." *See In re Franklin Sav. Corp.*, 385 F.3d 1279, 1286 (10th Cir. 2004) (citing 28 U.S.C. § 2679(a)); 28 U.S.C. § 1346(b). The Complaint does not allege jurisdiction under the FTCA. Further, while the United States has consented to be sued for torts in the FTCA, as a prerequisite to suit under the Act, the claim must first be presented to the appropriate federal agency and be finally denied by the agency. *Three-M Enterprises, Inc. v. United States*, 548 F. 2d 293, 294 (10th Cir. 1977) (citations omitted). "This requirement is jurisdictional and cannot be waived." *Id.* Mr. Hankins has not alleged that he filed an administrative claim which fully complied with the FTCA.

"Waiver of sovereign immunity must be explicit and cannot be implied." *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006). Mr. Hankins bears the burden of establishing that the United States waived sovereign immunity regarding the claims in this matter in order for the court to exercise subject matter jurisdiction. *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1245 (D. Colo. 2011) (citations omitted). Mr. Hankins has not demonstrated that the United States has waived sovereign immunity for the circumstances he alleges. The Complaint fails to state a claim against the BLM and its agent sued in his official capacity, Mr. Husband, because they are immune from suit. Defendants BLM and Mr. Husband in his official capacity are properly dismissed from the case.

---

[2] As Mr. Hankins seeks only monetary relief in this action, he does not argue that sovereign immunity would not preclude a request for injunctive relief.

[3] in his Supplement, Mr. Hankins challenges the BLM's agency Notices, Orders, and Decisions between January 1, 2000 and October 10, 2010 as fraudulent. (*See* Doc. # 57). However, fraud is excepted from the FTCA's waiver of sovereign immunity. *See* 28 U.S.C. § 2680(h) (provisions of FTCA do not apply to "any claim arising out of . . . deceit"); *Haney v. Castle Meadows, Inc.*, 868 F. Supp. 1233, 1237 (D. Colo. 1994).

2.      Claims against Mr. Husband in his Individual Capacity

Mr. Hankins has indicated that he is suing Defendant Husband in both his official and individual capacities.  (*See* audio recording of hearing held on January 5, 2012).  Under certain circumstances, an action can be maintained against federal officials or agents in their individual capacities for violations of constitutional rights under color of federal law.  *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  In *Bivens*, the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001).  *See also Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) ("a *Bivens* claim lies against the federal official in his individual capacity – not . . . against officials in their official capacity");  *Applewhite v. U.S. Air Force*, 995 F.2d 997, 999 n.8 (10th Cir. 1993) (*Bivens* suits seek to impose personal liability upon a federal government official for damages "arising out of the federal official's violation of federal constitutional law.").

Personal participation is an essential allegation in a *Bivens* action.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.");  *Kite v. Kelley*, 546 F.2d 334, 336-38 (10th Cir. 1976) (plaintiff suing federal officials for constitutional violations under *Bivens* must show affirmative link between defendant's conduct and the alleged constitutional deprivation).  *See also Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003) (no *respondeat superior* liability in *Bivens* actions), *abrogation on other grounds recognized by* 814 F. Supp. 2d 1317 (M.D. Ala. 20011);  *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (complaint must allege personal involvement by government official in events giving rise to constitutional claim under *Bivens*)*; Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir. 1994) (*respondeat superior* cannot be the basis of a *Bivens* claim, there must be individual participation and involvement by the defendant).

The Complaint contains no specific factual allegations of conduct by Mr. Husband that

could be violative of Mr. Hankins' federal civil rights.  Mr. Husband is not mentioned

anywhere in the Complaint other than the caption.  Mr. Hankins makes no allegations that

Defendant Husband personally participated in any constitutional deprivation.  There are no

allegations that identify what actions Defendant Husband took that give rise to any

constitutional violation.  As there are no facts alleged to support a claim against Mr. Husband

under *Bivens*, the Complaint is properly dismissed against Mr. Husband in his individual

capacity.[4]


B.      Axis' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

        Mr. Hankins alleges destruction or removal of his property "without the benefit of due

process."  (*See* Doc. # 1 at 7 of 12).  Where, as here, federal law provides the alleged basis

for jurisdiction, "the constitutional limits of due process derive from the Fifth, rather than the

Fourteenth, Amendment."  *Republic of Panama v. BCCI Holdings (Luxemburg)*, 119 F.3d

935, 942 (11th Cir. 1997) (citation omitted).  The Due Process Clause of the Fifth

Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property,

without due process of law."  U.S. Const. amend. V.

> To establish that his due process rights have been infringed, plaintiff must
> demonstrate that the laws creating these rights give rise to a legitimate claim of
> entitlement.  In the case of a mining claim such as plaintiff possesses, the
> United States Supreme Court has held that an unpatented mining claim is a
> unique form of property which imparts a possessory mineral interest in land.  A
> mining claim has been described as property in the fullest sense of that term.

*Rogers v. United States*, 575 F. Supp. 4, 6-7 (D. Mont. 1982).  The court assumes without

deciding "that plaintiff's unpatented mining claim is sufficient to invoke the property strictures

---

[4]      In his Response, Mr. Hankins acknowledges that Mr. Husband has not yet been
served in his individual capacity and asks "the Court to remove his name from Complaints
and Motions so far filed and to substitute instead '[t]he Unknown Manager of the Little Snake
Resource area, or any presently Acting Manager, acting individually.' " (*See* Doc. # 62).  Mr.
Hankins asks the court to "use the U.S. Marsha[l]'s Service to obtain jurisdiction over the new
unknown Manager . . . ."  However, an unidentified individual cannot be served by the U.S.
Marshal.  Further, Mr. Hankins provides no indication of any personal participation in any
alleged constitutional violation by an unknown or acting manager of the Little Snake
Resource area.

of the Fifth Amendment's due process clause."  *Id.*[5]

"[T]he Fifth Amendment limits only the conduct of government officials" and does not apply to private parties.  *United States ex rel Nagy v. Patton*, No. 11-267, 2012 WL 1858983, at * 2 (E.D. Pa. May 22, 2012) (citation omitted).[6]  *See also Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal Government and not private persons);  *United States v. Balsys*, 524 U.S. 666, 700 (1998) (Stevens, J., concurring) ("Th[e] [Fifth Amendment] constrains the power of the Federal Government to deprive any person 'of life, liberty, or property, without due process of law,' just as the Fourteenth Amendment imposes comparable constraints on the power of the States.");  *Gilmore v. Salt Lake Community Action Program*, 710 F.2d 632, 635–36 (10th Cir.1983) (requiring federal action to assert Fifth Amendment due process violation).

"Nevertheless, in scenarios in which government officials actively direct or assist private actors in causing harm to an individual, some courts have treated the government's involvement as amounting to government conduct."  *Velez-Diaz v. Vega-Irizarry*, 421 F.3d 71, 79 (1st Cir. 2005).  *See also Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 486 (1988) (Courts have applied the Fifth Amendment due process clause to private individuals when the private parties have made "use of state procedures with overt, significant assistance of state officials.");  *United States v. Garlock*, 19 F.3d 441, 442 (8th Cir. 1994) (Only where the government controlled or encouraged the conduct at issue, such that the private individual "acted as an instrument or agent of the government," will the Constitution protect the defendant.) (internal quotation marks and citation omitted).

The Complaint asserts two claims for relief.  Axis is not named or identified in Claim One alleging a loss of equipment, mining improvements and personal property.  (*See* Doc. #

---

[5]   Defendant notes that Mr. Hankins alleges the property in question was not removed until approximately August 2010,  which is several years after the April 4, 2008 Cessation Order obtained by the BLM.  If the BLM had the right to obtain possession or control of the property that is the subject of Mr. Hankins' claims, then he may not be able to establish a legitimate claim of entitlement giving rise to a due process right.

[6]   Copies of unpublished cases cited are attached to this Recommendation.

1 at 5-7 of 12).  While no specific cause of action is identified in Claim Two, Axis is named with respect to loss of income from a 24-foot by 4-foot trommel that is alleged to have been "stolen by the BLM in August 2010." (*See* Doc. # 1 at 9 of 12).  In the Nature of the Case, Mr. Hankins alleges that Axis, acting "under contract from BLM, entered plaintiff's property at Mindy Rae No. 1 placer mining claim and illegally damaged or removed mining equipment and personal property . . . ." (*See* Doc. # 1 at 4 of 12).  Mr. Hankins alleges that Axis, while "acting for the BLM tried to remove the 24-foot by 4 foot Cedar Rapids trommel . . . ." (*See id.*).

First, the court may properly conclude that Mr. Hankins has confessed Axis' Motion. Mr. Hankins admitted in a letter filed with the court on February 29, 2012 that "Axis Steel is no longer on the Complaint before this Court" and filed an Amended Complaint that did not name Axis as a Defendant.  (*See* Docs. # 46, # 47). [7]  In his Supplement, Mr. Hankins conceded that "appar[e]ntly [Axis was] not contractually involved." (*See* Doc. # 57 at 20 of 29).  Appearing via telephone at the May 14, 2012 Status Conference, Mr. Hankins conceded that Axis had been misidentified.  (*See* Courtroom Minutes/Minute Order (Doc. # 58).  The court directed Mr. Hankins to file a written response agreeing to or confessing Axis' Motion to Dismiss.  (*See id.*).  On May 18, 2012, Mr. Hankins filed his Response to Axis' Motion, indicating that he "agrees that Axis Steel, Inc. was 'misidentified' as the reclamation contractor for the BLM at the Ace No. 7 (Mindy Rae No. 1) mining claim in Moffat County" and "apologiz[ing] again for this mistake, caused by overly redacted Freedom of Information response from the BLM and my inability to personally investigate due to my incarceration." (*See* Doc. # 59).

In his Response, Mr. Hankins also "states, however, that the patrol records of BLM Ranger Barry Nelson, did show that Axis Steel, Inc., entered the Mindy Rae No. 1 claim on

---

[7]   On February 29, 2012, Mr. Hankins submitted an Amended Complaint which the court struck for failure to seek leave of the court.  (*See* Docs. # 56, # 47).  Mr. Hankins has not further sought to amend his pleadings.  (*See, e.g.,* Courtroom Minutes/Minute Order (Doc. # 58)).

June 23, 2009 (see Exhibit 'AAA') which was trespass without the owner's permission . . . ." (*See* Doc. # 59 at 1-2 of 3). Even if Mr. Hankins is not confessing Axis' Motion to Dismiss, the Motion is properly granted. The claims in the Complaint are based solely on the alleged theft or destruction of property in August 2010. A trespass on June 23, 2009 is not related on its face to the claims in the case, and Mr. Hankins does not explain any relationship between a trespass in 2009 and the claims in his Complaint. Mr. Hankins has not alleged sufficient facts in the Complaint to suggest that he is entitled to relief against Axis. *See Twombly*, 550 U.S. at 570.

Nor has Mr. Hankins disputed the summary judgment record submitted by Axis. Axis presents evidence that it did not engage "in any contracts, written or otherwise, with respect to removal of equipment on any mining claims located in Moffat County, Colorado, and specifically with respect to the mining claim alleged in" the Complaint, and has never acted on behalf of the BLM. (*See* Affidavit of Charles Dial (Exhibit A to Axis' Motion) (Doc. # 30-1)). There are no records showing that Axis was "awarded any contract or [had] any involvement with respect to" Mr. Hankins' mining claim. (*See* Declaration of Wendy Reynolds (Exhibit B to Axis' Motion) (Doc. # 30-2)). The evidence submitted by Axis and unrefuted by Mr. Hankins demonstrates that Axis is not a proper party to this action. In his Response, Mr. Hankins does not address the substance of Axis' evidence. Mr. Hankins fails to carry his burden to show, through affidavits or other competent evidence, that summary judgment should not be granted in favor of Axis.

Accordingly, IT IS RECOMMENDED that:

1.      Defendant Husband's "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)" (filed December 23, 2011) (Doc. # 24) be GRANTED and Defendant Husband be dismissed without prejudice from this civil action.[8]

---

[8]   "[D]ismissals for lack of jurisdiction should be without prejudice . . . ." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir.2006) (citations omitted).

2.      Defendant Axis Steel, Inc.'s ("Axis") "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (filed January 13, 2012) (Doc. # 30) be GRANTED and summary judgment be entered on the Complaint in favor of Axis Steel, Inc. and against Plaintiff.

3.      Defendant Federal Bureau of Land Management's ("BLM") "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)" (filed February 23, 2012) (Doc. # 35) be GRANTED and Defendant BLM be dismissed without prejudice from this civil action.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the

ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 5th day of June, 2012.

BY THE COURT:


 s/ Craig B. Shaffer
United States Magistrate Judge